UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
FREE COUNTRY LTD,                     :
                                      :
              Plaintiff,              :          16 CV 8746 (JSR)
                                      :
          -v-                         :          OPINION
                                      :
BRIAN DRENNEN, MATTHEW VANDER         :
WYDEN, ROUSSO APPAREL GROUP, INC.     :
and SANTA FE APPAREL, LLC,            :
                                      :
              Defendants.             :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

     This dispute comes before the Court after Plaintiff Free Country

LTD ("Free Country") moved ex parte for an order to show cause for a

preliminary injunction and temporary restraining order ("TRO") against

defendants Brian Drennen, Matthew Vander Wyden, Rousso Apparel Group,

Inc. ("Rousso"), and Santa Fe Apparel, LLC ("Santa Fe") (collectively,

the "defendants"). In brief, plaintiff alleges that its former

employees, defendants Drennen and Vander Wyden, have misappropriated

plaintiff's trade secrets in order to establish a competing product

line for defendants Rousso and Santa Fe. Initially, the Court granted

the plaintiff's motion by Order dated November 10, 2016, which it

amended on November 17, 2016. Subsequently, however, after counsel for

defendants had appeared, the Court held a three-day evidentiary

hearing to put the TRO to the test of the adversary system.

Thereafter, on the basis of the Court's assessment of the evidence

presented at that hearing (including its assessment of the witnesses'

demeanor and credibility), the Court by Order dated December 9, 2016

granted in part plaintiff's motion for a renewed TRO by prohibiting

defendants from using or disseminating plaintiff's confidential information, but denied plaintiff's request that defendants be ~~prohibited from soliciting Free Country's customers in connection with~~ the fall 2017 season. This Opinion explains the reasons for these post-hearing rulings.

Plaintiff Free Country is an apparel manufacturer and wholesaler with approximately 65 employees. See transcript of evidentiary hearing ("Tr.") 172:5-10. Plaintiff maintains a wide variety of business information on a shared network system, id. at 177-178, and provides email accounts to its employees, id. at 178:7-9. Employees access these systems by logging in to password-protected computers provided by Free Country, id. at 267:20-23, and plaintiff generally requires new hires to sign a confidentiality agreement and an acknowledgement of the company's handbook. Id. at 179:19-25. By signing the documents, the employees agree to not disseminate Free Country's proprietary information. Id. at 180-181; 190-191.

In August 2014, plaintiff hired defendant Drennen, who had 20 years of experience in the apparel industry, to oversee Free Country's Men's and Ladies' active wear as Vice President of Sales. Id. at 173:22-174:11; 382:13-25. In November 2015, plaintiff hired defendant Vander Wyden, who had 30 years of industry experience, as a director of sales for Men's outerwear. Id. at 176:2-6; 282:9-23.[1]

---

[1] While it is disputed whether Vander Wyden signed a confidentiality agreement and acknowledgement of the company's handbook, Tr. 321:2-14, Vander Wyden was aware that by accepting employment at Free Country he was bound not to disclose Free Country's confidential information. Id.

Both Drennen and Vander Wyden had a practice of transferring materials from Free Country's server during their employment. In or around March 2015, Drennen installed on his company computer a file-sharing program called "Dropbox," id. at 345:25-346:3, which allows users to transfer information among "linked" devices using an online "cloud" account. Id. at 85:2-86:2; 21:22-22:10. Drennen testified that he used the program to aid his work while he was on the road or at home, and linked three personal devices to his Dropbox account while at Free Country: an Android phone, an iPad, and an iMac. Id. at 346:6-16. Defendant Vander Wyden, in turn, frequently emailed to himself Free Country's "Master Contact List," id. at 327:16-23, which contained the contact information for the company's clients, id. at 231:17-19. Vander Wyden testified that he used the list while traveling on Free Country's behalf. Id. at 334:12-20.

Neither Drennen nor Vander Wyden were happy at Free Country. Id. at 290:14-17; 430:9-16. In late September 2016, Drennen and Vander Wyden began employment negotiations with defendant Rousso.[2] Id. at 315:10-20. Vander Wyden subsequently resigned from Free Country on October 13, 2016, after receiving an offer to create a competing product line for Rousso's newly-formed division, "Mountain and Isles." Id. 279:2-3; 316:11-15. Prior to his departure, however, Vander Wyden

---

at 281-284.

[2] Defendant Santa Fe is an affiliate of Rousso located in the same office space as Mountain and Isles. Tr. 315:2-317:3. It does not appear that defendants were in negotiations with Santa Fe. Id.

emailed to his personal address on October 10 and 11, 2016 copies of several documents, including Free Country's Master Contact List and an email containing four product designs dating from the mid-1900s. Id. at 291-293.

The same day that Vander Wyden resigned, Drennen began transferring a substantial quantity of information from Free Country's server into his Dropbox account, including customer orders and design information for the fall 2017 season.[3] Id. at 89:21-90:5; 201:3-21. Drennen made an additional transfer on October 18, 2016, id. at 126:8-17, and resigned from Free Country three days later on October 21, 2016 to join Mountain and Isles, id. at 111:9-12. Drennen uninstalled Dropbox from his Free Country computer the same day. Id. at 115:15-20. During the evidentiary hearing, Drennen testified that he transferred the materials so that he could review the files for personal information, id. at 353:1-10, and that he deleted any Free Country documents by October 22, 2016, id. at 358:10-15. The Court entirely discredits the first statement, but is inclined to credit the second statement.

Free Country discovered the document transfers after reviewing Drennen's laptop and issued cease and desist letters to defendants Drennen and Vander Wyden on October 27, 2016.[4] Id. at 199:17-200:17;

---

[3] The precise quantity is subject to dispute. Free Country estimates that defendant Drennen transferred nearly 50,000 files and 257GB of information. See Tr. at 89:21-90:5. Defendant Drennen argues that the amount is much smaller. Id. at 97:2-98:11.

[4] The parties dispute the precise day that Drennen received the

415:15-416:3; 417:12-24. On November 10, 2016, plaintiff moved ex
parte for an order to show cause for a preliminary injunction and
~~temporary restraining order~~, alleging among other causes of action
that defendants had misappropriated Free Country's trade secrets in
violation of New York law and the Defend Trade Secrets Act ("DTSA"),
18 U.S.C. § 1831. See ECF No. 1. The Court granted plaintiff's motion,
see ECF No. 9, and held a hearing on the order to show cause on
November 15, 2016. On November 17, 2016, the Court extended and
amended its order to prohibit defendants Drennen and Vander Wyden from
soliciting Free Country's customers unless defendants could show that
such customer contact information was in their possession prior to
their employment at Free Country. See ECF No. 17. The amended order
also required that defendant Drennen permit inspection of his Dropbox
account by a neutral forensic expert agreed upon by the parties or
appointed by the Court. Id. By consent orders dated November 20 and
21, 2016, the Court appointed Robert Knudsen as the neutral forensic
expert and established a protocol for his examination of the account.
See ECF No. 18, 19. Mr. Knudsen submitted his report to the Court on
November 29, 2016, which the Court provided to the parties the
following day. The Court subsequently held an evidentiary hearing on
the temporary restraining order on December 5, 7, and 8, 2016, the key
issue of which was whether the Court should prohibit defendants
Drennen and Vander Wyden from soliciting Free Country's customers in

---

letter, id. at 415:10-21, but this fact is immaterial to the current
proceedings.

connection with the fall 2017 season. By order dated December 9, 2016, the Court granted in part plaintiff's motion for a renewed TRO, but ~~denied the proposed non-solicitation provision.~~

The standard for an entry of a TRO is essentially the same as for a preliminary injunction. Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). The main differences are, first, that a TRO is often granted ex parte but thereafter has a limited lifespan and, second, that even where (as here) there is a subsequent adversarial hearing on the TRO, it typically occurs before there has been extensive discovery. Therefore, a TRO, perhaps even more so than a preliminary injunction, is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." JBR, Inc. v. Keurig Green Mountain, Inc., 618 F. App'x 31, 33 (2d Cir. 2015) (quoting Sussman v. Crawford, 488 F.3d 136, 139 (2d Cir. 2007)).

A party seeking a TRO, like one seeking a preliminary injunction, must typically show four elements: (1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if a TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted. Id. (citing Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010)). A TRO, like a preliminary injunction, is "never awarded as of right," Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008), and

whether to grant such relief "rests in the sound discretion of the
district court," JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79
(2d Cir. 1990).

The underlying substantive claims largely rest on alleged
misappropriation of Free Country's trade secrets. The requirements for
showing a misappropriation of a trade secret are similar under state
and federal law. Under New York law, a party must demonstrate: (1)
that it possessed a trade secret, and (2) that the defendants used
that trade secret in breach of an agreement, confidential relationship
or duty, or as a result of discovery by improper means. N. Atl.
Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999).
Similarly, under the DTSA, a party must show "an unconsented
disclosure or use of a trade secret by one who (i) used improper means
to acquire the secret, or, (ii) at the time of disclosure, knew or had
reason to know that the trade secret was acquired through improper
means, under circumstances giving rise to a duty to maintain the
secrecy of the trade secret, or derived from or through a person who
owed such a duty." Syntel Sterling Best Shores Mauritius Ltd. v.
Trizetto Grp., Inc., No. 15CV211LGSRLE, 2016 WL 5338550, at *6
(S.D.N.Y. Sept. 23, 2016) (quoting 18 U.S.C. § 1839(3) (A)-(B)).

The Court finds at the outset that there is no evidence of any
wrongdoing by the corporate defendants, Rousso and Santa Fe. While
their clear (and legitimate) intent was to go into direct competition
with Free Country, they appear to have been unaware prior to this

lawsuit that defendants Drennen and Vander Wyden transferred any allegedly confidential information to their personal possession, and there is no evidence that Rousso or Santa Fe have ever come into possession of such information. See id. at 239:24-240:8; 317:4-7; 318:10-15. Accordingly, the Court finds that plaintiff has failed to show a likelihood of success on the merits against defendants Rousso and Santa Fe.[5]

Defendants Drennen and Vander Wyden present a closer call. While they each arguably misappropriated plaintiff's information (see infra), there is no evidence that defendants Drennen and Vander Wyden colluded with each other for this purpose or exchanged any allegedly confidential information between themselves.[6] See id. at 287:3-22; 360:20-362:14. The Court must therefore address the applicability of a TRO against these defendants separately, because the nature of the information allegedly misappropriated by each defendant differs. The Court begins with defendant Vander Wyden.

Plaintiff alleges that Vander Wyden misappropriated two types of proprietary information: Free Country's client list and Free Country's

---

[5] As the Court stated on the record, however, at this point it is not appropriate to dismiss defendants Rousso and Santa Fe from the proceedings because they may still be necessary as relief defendants, depending on any future injunctive action by the Court. See Tr. at 432:13-25.

[6] Plaintiff's sole "evidence" of collusion in this respect is that defendants jointly traveled to China on a business trip after beginning their employment at Mountain and Isles. Tr. 462:22-463:1. Such joint travel is unsurprising, however, because Drennen and Vander Wyden are employed by the same entity for the same purpose of promoting a new line of apparel.

pricing information relating to Free Country's products. Although the
Court has some misgivings about Vander Wyden's credibility in certain
~~respects, such concerns are irrelevant for present purposes since the~~
Court is not persuaded that either of the two kinds of information he
is accused of misappropriating are trade secrets. Under Second Circuit
precedent, a customer list "developed by a business through
substantial effort and kept in confidence may be treated as a trade
secret . . . provided the information it contains is not otherwise
readily ascertainable." N. Atl. Instruments, Inc. v. Haber, 188 F.3d
38, 46 (2d Cir. 1999).[7] "The question of whether or not a customer
list is a trade secret is generally a question of fact." A.F.A. Tours,
Inc. v. Whitchurch, 937 F.2d 82, 89 (2d Cir. 1991). Based on the
Court's review of plaintiff's client list, Free Country's customers
are well-known apparel retailers whose identities are not protected
(indeed, many are named in plaintiff's complaint). The contact
information for these companies is also readily ascertainable by
calling the companies' general lines, Tr. 334:25-335:4, through
external sources such as LinkedIn and Google, id. at 383:1-385:23, and
directories of buyers in the apparel industry, id. at 296:16-20.
Indeed, plaintiff's Executive Vice President, Jody Schwartz, admitted

---

[7] The DTSA similarly defines a trade secret, among other things, as
any business information that (A) "the owner thereof has taken
reasonable measures to keep such information secret; and (B) "the
information derives independent economic value ... from not being
generally known ... [or] readily ascertainable ... [to] another person
who can obtain economic value from the disclosure or use of the
information[.]" 18 U.S.C. 1839(3)(A)-(B).

during testimony that the identities and contact information of Free Country's clients are known outside the company. Id. at 245:9-12. The Court therefore finds that plaintiff has failed to show a likelihood of success on the merits for misappropriation of Free Country's contact list.

Plaintiff's allegations concerning Free Country's pricing information are similarly flawed. Data relating to pricing can constitute a trade secret under some circumstances. In re Dana Corp., 574 F.3d 129, 152 (2d Cir. 2009). However, this is generally where a company uses some type of proprietary formula that gives it a unique advantage, such as a complex pricing or trading algorithm in a financial business. See Saks Inc. v. Attachmate Corp., No. 14 CIV. 4902 CM, 2015 WL 1841136, at *18 (S.D.N.Y. Apr. 17, 2015); Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc., 323 F. Supp. 2d 525, 537-38 (S.D.N.Y. 2004). On the other hand, information relating to Free Country's underlying mechanics, such as the prices of materials and costs of manufacturing, are not trade secrets because "any seller's publicly-available prices signal to competitors some information about the underlying mechanics of the seller's pricing structure." Silipos, Inc. v. Bickel, No. 1:06-CV-02205, 2006 WL 2265055, at *4-5 (S.D.N.Y. Aug. 8, 2006); see Prod. Res. Grp., L.L.C. v. Oberman, No. 03 CIV. 5366 (JGK), 2003 WL 22350939, at *14 (S.D.N.Y. Aug. 27, 2003).

Here, Free Country has offered no evidence that it prices,

sources, or manufactures its clothing line using anything other than industry practice. Defendant Drennen, Free Country's former employee, testified that Free Country determined pricing using "basic sourcing information" commonly utilized in the industry and easily reverse engineered. Tr. at 366:11-368:6. While this testimony may be self-serving on Drennen's part, Free Country has failed to present any convincing evidence to the contrary.[8] Accordingly, the Court finds at this time that plaintiff has failed show that the pricing information at issue constitutes a trade secret for the purposes of Free Country's misappropriation claim.[9]

Furthermore, even if plaintiff could make such a showing, plaintiff has failed to show the second prong of its misappropriation claim: that defendant Vander Wyden will use such pricing information in breach of an agreement or confidential relationship. Plaintiff does not argue that Vander Wyden currently possesses any specific documents containing Free Country's pricing information. Rather, plaintiff argues that Vander Wyden was privy to such information as part of his responsibilities at Free Country, and should be prohibited from working for a competitor because the information now resides in his

---

[8] In this regard, plaintiff presented only Ms. Schwartz's broad statements that such information was part of Free Country's "secret sauce" and competitors could "potentially undercut [Free Country's] prices." Id. at 203:15-21; 204:19-12. This latter, of course, smacks more of free market competition than misappropriation.

[9] All the findings of fact made in this Opinion are, of course, made only for the preliminary purposes of adjudicating the TRO and are not binding or final for any other purpose.

head.

New York law recognizes a specific means for plaintiff to protect information under such circumstances: a non-competition provision. See EarthWeb, Inc. v. Schlack, 71 F. Supp. 2d 299, 311 (S.D.N.Y. 1999); Janus et Cie v. Kahnke, No. 12 CIV. 7201 (WHP), 2013 WL 5405543, at *2 (S.D.N.Y. Aug. 29, 2013). In the absence of such a provision, courts in this Circuit will restrict an individual's employment only where the individual has stolen its former employer's trade secrets and there is a high probability that the individual will "inevitably disclose" this information to its new employer. Id.

Here, plaintiff has failed to show that defendant Vander Wyden has stolen proprietary information relating to pricing, let alone that Vander Wyden will inevitably disclose such information. To be sure, Vander Wyden's explanation for how he "accidentally" emailed to himself four product designs prior to his departure from Free Country is unworthy of belief. Tr. 291-293. Nonetheless, the information contained in these decades-old designs is unlikely a trade secret, and even if it were, it has nothing to do with pricing.[10] The possibility

---

[10] Contrary to plaintiff's assertion at the evidentiary hearing, the Court is aware of no presumption of inevitable disclosure where a defendant has copied some of plaintiff's confidential information. Copying can provide strong (and sometimes overwhelming) circumstantial evidence that the information is valuable and that defendant intends to use it. Here, however, the alleged transfer was miniscule (four product designs) and was unrelated to alleged proprietary information (pricing). Given these circumstances, and the fact that the TRO, as amended, continues to prohibit defendant from using or disclosing plaintiff's proprietary information, see ECF No. 27, the Court is not persuaded that any disclosure of proprietary information is inevitable.

that Vander Wyden may have been interested in designs does not make it highly likely that he would disclose confidential information concerning Free Country's pricing.[11]

The Court is also not convinced that any injuries that might flow from the two kinds of information that Vander Wyden is accused of misappropriating cannot be remedied by money damages. As to the customer lists, while the loss of a customer relationship can result in irreparable harm where the relationship would otherwise have produced "an indeterminate amount of business in years to come," Marsh USA Inc. v. Karasaki, No. 08 CIV. 4195 (JGK), 2008 WL 4778239, at *14 (S.D.N.Y. Oct. 31, 2008) (quoting Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999)), plaintiff here does not argue that there will be any such ongoing loss. As for the pricing information, there is no evidence that Vander Wyden's allegedly misappropriated pricing information will be relevant beyond the fall 2017 season, see Tr. 373:13-375:8; 466:2-8; 487:3-11, or that plaintiff will suffer any ongoing loss of customer goodwill. Instead, plaintiff claims that Vander Wyden will use its pricing information to undercut its business with a defined subset of its customers for a discrete period of time, which can easily be quantified at trial. See Liberty Power Corp., LLC v. Katz, No. 10-CV-1938 NGG CLP, 2011 WL 256216, at *7 (E.D.N.Y. Jan.

---

[11] Plaintiff's citation to Henry Schein, Inc. v. Cook, No. 16-CV-03166-JST, 2016 WL 3212457, at *3 (N.D. Cal. June 10, 2016) is not to the contrary (and, of course, is not binding on the Court in any event). There, the court granted an ex parte motion for a temporary restraining order where the defendant transferred a broad range of confidential information to her computer prior to her resignation. The

26, 2011) (finding that harm was not irreparable where plaintiff alleged that defendant's misappropriation would result in lost ~~contracts with a "finite albeit large number of customers"~~).

As for the balance of the equities, there is no dispute that a temporary restraining order prohibiting Vander Wyden from selling to Free Country's customers for the fall 2017 season would effectively mean that Vander Wyden could not work for his new employer. Tr. 388:24-389:23; 482:17-483:1. This has implications not only for Vander Wyden's personal welfare, but future employment prospects as well. Id. at 388:24-389:23.

Accordingly, for the foregoing reasons, plaintiff has failed to show that a TRO prohibiting Vander Wyden from selling to Free Country's customers for the fall 2017 season is warranted.

The Court next turns to plaintiff's request for a TRO against defendant Drennen. It is clear that Drennen expressly copied a large amount of Free Country's information immediately prior to his resignation, id. at 97:2-98:11, and the Court concludes that his claim that he did so solely to help him sort out which information was personal and which was not is preposterous. While plaintiff does not specify which of the copied documents, including customers sales information, design packages, and production packages for past, present, and future business, id. at 201:3-202:13, are proprietary, the Court agrees with plaintiff that the information taken as a whole is a trade secret critical to plaintiff's business. See id. at 456:23-

_____

nature of defendant Vander Wyden's transfer is materially different.

457:4 ("[T]his is not simply just about a single CAD or even a master contact list or any single document. It is the body of the information that was found in the Drennen Dropbox folder that not only concerns the historical business of Free Country but its current business and its prospective business"); see also id. at 457:5-12.

Plaintiff, however, has failed to show a likelihood that defendant Drennen used the proprietary information transferred to his Dropbox account for an improper purpose, or is likely to do so in the future. During the evidentiary hearing, Drennen testified that he had deleted any Free Country-related information from his Dropbox account by October 22, 2016, id. at 358:10-15, and that he did not transfer any Free Country information prior to its deletion. Id. at 360:20-362:14. Defendant Vander Wyden similarly testified that he never accessed Drennen's Dropbox account or received Free Country information from Drennen. Id. at 287:3-22.

This testimony is materially corroborated by the neutral forensic analyst. Specifically, the forensic analysis conducted by Knudsen confirmed that Drennen has deleted all but 486 files from his Dropbox, id. at 26:20-24, none of which appear to contain proprietary information. There is also no evidence that Drennen has transferred Free Country's materials to another device, or that Drennen lied about the date on which he deleted Free Country's files.[12]

---

[12] Of course, Knudsen did not provide a complete account of Drennen's Dropbox activity because his review protocol did not require him to do so. Id. at 12:2-21, 17:3-20; 22:5-14. At this stage of the proceedings, however, the Court is not prepared to draw an adverse

To be sure, the finding that Drennen no longer possesses Free Country's materials does not mean that Drennen did not look at the files prior to deleting them. Free Country could therefore theoretically lodge an inevitable disclosure claim based on the information still in Drennen's head. But this argument would nonetheless fail. Plaintiff concedes that the materials transferred by Drennen are only useful to a competitor as a "body" of information. See id. at 456:23-457:4. This body is enormous. Drennen transferred nearly 50,000 files, id. at 89:23-25, and while only a subset of these files may be proprietary, plaintiff concedes that even individual documents contain a "tremendous" amount of information. Id. at 210:5-11. Drennen possessed the files at issue for a maximum of nine days, and the Court is not persuaded that Drennen could have memorized gigabytes of data concerning Free Country's past, present, and future business in such a short period of time. See, e.g., Robert Half Int'l, Inc. v. Dunn, No. 5:13-CV-974, 2013 WL 10829925, at *8 (N.D.N.Y. Oct. 29, 2013) (rejecting inevitable disclosure claim because there was no evidence that defendant was still in possession of plaintiff's confidential information). Accordingly, in the absence of evidence of misuse, the Court finds that plaintiff has failed to show a likelihood of success on the merits of its misappropriation claim against Drennen.

---

inference against Drennen because of an incomplete protocol jointly proposed and agreed upon by the plaintiff. It should further be noted that Drennen has voluntarily consented to the forensic analyst deleting the remaining files in his Dropbox account. Id. at 431:9-11.

Furthermore, plaintiff has failed to show that it will suffer any imminent irreparable harm from Drennen's copying that now warrants injunctive relief. Irreparable harm requires an "injury that is neither remote nor speculative, but actual and imminent." N.Y. ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 660 (2d Cir. 2015) (quoting Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir.1999)). As set forth at the evidentiary hearing, plaintiff's alleged injury arises out of lost sales for the fall 2017 season. Tr. 489:9-490:19. The parties do not negotiate these sales until January and February 2017, and do not ship their products until closer to the season. Id. Since the Court has expedited discovery, plaintiff has ample time to determine whether defendant Drennen and Vander Wyden are, notwithstanding their denials, still in possession of any proprietary information. Should defendants have been less than forthcoming, the Court has scheduled a preliminary injunction hearing to conclude by no later than January 31, 2017, and plaintiff may move for a preliminary injunction upon discovery of any material information. At that time, the Court has a variety of means to avoid any imminent irreparable harm to the plaintiff, including prohibiting defendants from completing any sales to Free Country's past and present customers. Given the lack of imminence at the present time, however, the balance of the hardships tips in defendant Drennen's favor for the same reasons articulated for defendant Vander Wyden.

Finally, as in Vander Wyden's case, the equities favor not

17

preventing Drennen from engaging in his new employment absent a
greater showing than plaintiff has so far made.

For all the foregoing reasons, the Court, in its Order dated
December 9, 2016 granted in part plaintiff's motion for a renewed TRO,
but rejected plaintiff's request that defendants be prohibited from
soliciting Free Country's customers for the fall 2017 season.

Dated: New York, New York
     December 30, 2016

                                                JED S. RAKOFF, U.S.D.J.

18